UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD SEITZ,<br><br>   Plaintiff,<br><br>v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al.,<br><br>   Defendants. | Case No. 20-cv-05442-DMR<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 23 |

Pro se Plaintiff James E. Seitz filed a complaint for breach of the duty of fair representation against Defendants International Brotherhood of Teamsters ("IBT"), Teamsters Local 986 ("Teamsters 986), and Chris Griswold. Defendants now move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint. [Docket No. 23.] The court held a hearing on December 10, 2020. For the following reasons, Defendants' motion is granted.

**I.   BACKGROUND**

Seitz is employed by United Airlines ("United") at San Francisco International Airport. His employment is covered by a collective bargaining agreement ("CBA") between his local union, IBT, and United. Compl. 3 ¶ 1.[1] His local union, Teamsters 986, "handle[s] the everyday part of representing him." Griswold, the Principal Officer of Teamsters 986, "is responsible for carrying out the Teamsters mission." *Id*.

---

[1] Defendants ask the court to take judicial notice of portions of the CBA at issue, including Article 19, which describes the grievance procedure. [Docket No. 23-1, Ex. A at 7-13.] Seitz does not object. The court may consider the CBA without taking judicial notice of it, as the contents of the CBA are alleged in the complaint and Seitz does not object to its authenticity. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (holding that "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.")

Seitz alleges that on June 10, 2019, he filed a grievance regarding "the Industry Reset calculation that is used to decide if [his] work group receives a raise." Compl. 4 ¶ 2. Seitz and shop steward Paul Burdick signed and submitted the grievance as the first step under the CBA. Following ten days with no response, Burdick moved the grievance to the second step on June 20, 2019. Seitz made multiple attempts to learn the status of his grievance in August, September, and December 2019. Compl. 4 ¶¶ 3-5.

On January 2, 2020, Seitz emailed Chief Union Steward Dale Mitchell asking for an update on the status of the grievance. Compl. 4 ¶ 6; Compl. 10 (Jan. 2, 2020 email). On January 6, 2020, Mitchell told Seitz "the grievance was elevated to business agent level and they will get a resolution by this week." *Id*. at 4 ¶ 5. However, Burdick later told Seitz that "Mitchell had told him the business agents were just going to close it out and not even look into it or have the hearing." *Id*. at 4 ¶ 6.

Seitz alleges that Mitchell sent him an email on January 24, 2020[2] stating that Mitchell, Burdick, and three other individuals "had a meeting on June 25, 2019, and decided amongst themselves to get rid of my grievance," which Seitz alleges "is a violation of the grievance procedures." Compl. 5 ¶ 7. The January 21, 2020 email from Mitchell is attached to the complaint. It states in relevant part:

> On June 25, 2019, myself, Fred Wood, Javier Lectora, Mark Desangles and Paul Burdick had a meeting concerning your grievance. We informed Paul that Article 19 [of the CBA] is not the correct process to address your concern. We also told Paul if he needed assistants [sic] writing grievances that he could contact me. The Understanding was that Paul would inform you of our conversations regarding your concern with LOA29, industry re-set. After this meeting was over, Paul informed myself and Fred that he would be resigning as shop Steward. At no time did Paul tell us he would not bring the information discussed back to you. *In spite of the fact, the grievance was not valid, I will send you a close letter.*

Compl. 13 (Jan. 21, 2020 email) (emphasis added).

---

[2] The January 24, 2020 date alleged by Seitz in paragraph 7 appears to be a typographical error, as the email attached to the complaint is dated January 21, 2020. *See* Compl. 5 ¶ 6; Compl. 12. This discrepancy does not affect the outcome of the parties' dispute about the timeliness of Seitz's complaint.

2

On February 10, 2020, Mitchell sent Seitz a letter informing him that his "complaint/ grievance was withdrawn," that "[t]here was no violation of the collective bargain [sic] agreement or [Letter of Agreement] #29," and that "[t]his grievance will be closed out." Compl. 5 ¶ 8; Compl. 11 (Feb. 10, 2020 letter).

Seitz alleges that after receiving the February 10, 2020 letter from Mitchell, he "sent multiple emails demanding the Teamsters follow the process," but that "Teamsters never replied to a single one." Compl. 5 ¶ 9. He attached to the complaint what appear to be three emails or excerpts from emails that Seitz sent to Mitchell. Compl. 12, 16. First, on February 24, 2020, Seitz wrote that the union's response to his grievance was "unacceptable and violates the collective bargaining agreement." He continued, "[m]y grievance needs to be processed correctly under the collective bargaining agreement and this email is to serve as your notice to do so." Compl. 12. On March 19, 2020, Seitz sent another email noting that Mitchell had not responded to his previous email. He wrote, "I want to proceed with the grievance process as it is laid out in the CBA" and asked for a response in 30 days. Compl. 16. Finally, on May 28, 2020, Seitz wrote to Mitchell that his email was "to serve as my final attempt to have you follow the terms of the collective bargaining agreement, to enforce the terms of the collective bargaining agreement, and to process my grievance according to the collective bargaining agreement." He asked again for a response within 30 days and wrote that if he did not receive a response, he "will be filing an action in federal court for breach of the duty of fair representation." Compl. 17-18.

On August 4, 2020, Seitz filed the instant complaint alleging a single claim for breach of the duty of fair representation against Defendants pursuant to the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq. Compl. 6. Defendants now move pursuant to Rule 12(b)(6) to dismiss the complaint.

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

3

(per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id.* at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26. The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations . . . when the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena,* 592 F.3d 954, 969 (9th Cir. 2010) (quotation marks and citation omitted).

Pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94. The Ninth Circuit has held that

4

"where the petitioner is pro se," courts have an obligation, "particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). "However, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### III. ANALYSIS

Defendants argue that Seitz's complaint is barred by the six-month statute of limitations applicable to claims for breach of the duty of fair representation under the RLA.

The RLA "authorizes employees in the railroad and airline industries to select a union to act as their exclusive representative for collective bargaining with their employer." *Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 597 (9th Cir. 2019). "As exclusive bargaining representative, the union assumes a duty to 'represent fairly the interests of all bargaining-unit members during the negotiation, administration, and enforcement of collective-bargaining agreements.'" *Id.* at 597-98 (quoting *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 47 (1979)). A union breaches its duty of fair representation "when its conduct is 'arbitrary, discriminatory, or in bad faith,' as, for example, when it 'arbitrarily ignore[s] a meritorious grievance or process[es] it in [a] perfunctory fashion.'" *Foust*, 442 U.S. at 47 (quoting *Vaca v. Sipes*, 386 U.S. 171, 190, 191 (1967)). Employees "have a 'judicially implied' cause of action under the RLA against their union for breaching its duty of fair representation." *Beckington*, 926 F.3d at 600 (quoting *Foust*, 442 U.S. at 47). Claims for breach of the duty of fair representation under the RLA are subject to a six-month statute of limitations. *Kelly v. Burlington N. R.R. Co.*, 896 F.2d 1194, 1197 (9th Cir. 1990) (holding RLA actions are subject to the six-month limitations period found in § 10b of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 160(b)).

Defendants contend that the statute of limitations on Seitz's duty of fair representation claim began to run on January 21, 2020, the date that Mitchell informed him by email that the grievance "was not valid." Therefore, according to Defendants, Seitz's lawsuit is time-barred because any complaint was due by no later than July 21, 2020, but Seitz did not file his complaint until August 4, 2020.

5

1    Seitz does not dispute that his claim is subject to a six-month statute of limitations.
2    However, he contends that his claim did not accrue until February 10, 2020, the date of Mitchell's
3    letter informing him that his "complaint/grievance was withdrawn" and that the grievance "will be
4    closed out." Opp'n 8-9. He argues that his August 4, 2020 complaint was timely, as it was filed
5    less than six months after the date of the "closeout letter." *Id*. at 9.

6    The statute of limitations on a duty of fair representation claim "generally begins to run
7    when an employee knows or should know of the alleged breach of duty of fair representation by a
8    union." *Galindo v. Stoody Co*., 793 F.2d 1502, 1509 (9th Cir. 1986); *Allen v. United Food &
9    Commercial Workers Int'l Union, AFL-CIO, CLC*, 43 F.3d 424, 427 (9th Cir. 1994) (claim
10   accrues "when the plaintiff knew, or should have known, of the defendant's wrongdoing and can
11   successfully maintain a suit in the district court."); *see Mediran v. Int'l Ass'n of Machinists &
12   Aerospace Workers*, 425 Fed. Appx. 550, 551 n.2 (9th Cir. 2011) (applying *Galindo* accrual rule
13   to breach of duty of fair representation claim brought under RLA). A duty of fair representation
14   claim based on a union's "deci[sion] not to file a grievance . . . generally accrues when the
15   employee learns or should have learned of the union's decision." *Galindo*, 793 F.2d at 1509.

16   Here, the statute of limitations on Seitz's duty of fair representation claim began to run on
17   January 21, 2020 because that is the date that Seitz learned that the union "would not pursue a
18   grievance on his behalf." *See Harris v. Alumax Mill Prods., Inc*., 897 F.2d 400, 404 (9th Cir.
19   1990) (holding that duty of fair representation claim accrued by the "date on which he was
20   informed by a Union representative that the Union would not pursue a grievance on his behalf.").
21   On that date, Chief Union Steward Mitchell informed Seitz by email that the CBA's grievance
22   procedure was "not the correct process to address [his] concern" and that "the grievance was not
23   valid." This is a clear and unequivocal statement that the union was not going to pursue Seitz's
24   grievance. Therefore, Seitz knew or should have known that the union would not pursue his
25   grievance upon receiving Mitchell's January 21, 2020 email. *See, e.g, Hill v. Ralphs Grocery Co*.,
26   896 F. Supp. 1492, 1500 (C.D. Cal. 1995) (finding that "it was clear that there was a potential
27   breach of duty claim" against union when union president told employees "[g]o ahead and sue
28   me" in response to complaints about union's failure to challenge plant closure; holding that "[i]t is

not necessary for a union to give final notice that it will not pursue a claim for the [fair representation] claim to accrue."). The February 10, 2020 letter merely confirmed what Seitz had already been told on January 21: that the union had decided to close out his grievance.

As Seitz knew or should have known that the union would not pursue his grievance by January 21, 2020, the six-month statute of limitations began to run on that date. In order for his complaint to be timely, Seitz was required to file it on or before July 21, 2020. Seitz did not file the complaint until August 4, 2020. Therefore, his lawsuit is untimely.

Seitz argues that even if his complaint is untimely, the doctrines of equitable estoppel and tolling should apply to save it from being time-barred. Opp'n 9-11 (citing *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1184 (9th Cir. 2001), *overruled on other grounds in Smith v. Davis*, 953 F.3d 582 (9th Cir. 2020) (en banc), and *Lewis v. Int'l Brotherhood of Teamsters*, 826 F.2d 1310, 1317 (3d Cir. 1987)).

"[E]quitable estoppel can be used to stop a limitations period from continuing to run after it has already begun to run." *Socop-Gonzalez*, 272 F.3d at 1184 (quotation marks and citation omitted). "Equitable estoppel, also termed fraudulent concealment, halts the statute of limitations when there is active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006) (quotation marks and citation omitted). "There must be evidence of an improper purpose by the defendant, or of the defendant's actual or constructive knowledge that its conduct was deceptive." *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1050 (9th Cir. 1987). Further, "[t]he plaintiff must demonstrate that he relied on the defendant's misconduct in failing to file in a timely manner and 'must plead with particularity the facts which give rise to the claim of fraudulent concealment.'" *Guerrero*, 442 F.3d at 706-07.

In his opposition brief, Seitz argues that equitable estoppel applies because the union "presented false information" to him about "the resolution to his grievance and knowingly kept him out of the grievance process outlined in the CBA." Opp'n 9. This is insufficient to establish equitable estoppel because it merely recites the merits of Seitz's complaint against the union. *See, e.g., McCray v. Unite Here! Local 19*, No. 16-CV-01233-BLF, 2017 WL 567319, at *5 (N.D. Cal.

Feb. 13, 2017) (holding that equitable estoppel did not apply where plaintiff failed to allege that his union "engaged in fraudulent conduct 'above and beyond the wrongdoing upon which [his] claim is filed.'" (quotation and citations omitted)). Seitz fails to allege any facts from which the court could draw a reasonable inference that the union engaged in "affirmative misconduct" to prevent Seitz from timely filing suit. *See Socop-Gonzalez*, 272 F.3d at 1184. For example, Seitz does not allege that Mitchell's January 21, 2020 email or any other communication from the union deterred him from filing suit in a timely manner. At the hearing, Seitz confirmed that Defendants did not engage in any affirmative behavior after January 21, 2020 that caused him to delay filing his lawsuit. Accordingly, the court concludes that the complaint does not allege facts to support a theory of equitable estoppel.

At the hearing, Seitz offered an additional but equally invalid theory of equitable estoppel. Seitz asserts that the union knew he had the right under the CBA to "go to arbitration on [his] own." He contends that the union's failure to respond to the three emails he sent in February, March and May 2020 constitutes wrongful or misleading conduct for purposes of equitable estoppel. Put another way, Seitz argues that the union's failure to respond to the emails he sent after the union rejected his grievance amounts to concealment of information about his rights. This argument is without merit, because Seitz does not allege that the union concealed material facts of which he was unaware about how and when to pursue a timely claim. *See Mukherjee v. I.N.S.*, 793 F.2d 1006, 1008 (9th Cir. 1986) ("estoppel traditionally is available against a nongovernmental party who has made a knowing false representation or concealment of material facts to a party ignorant of the facts").

Finally, Seitz argues that the statute of limitations should be tolled for the five months during which he "attempted to resolve this issue . . . before proceeding to court." He argues that "[t]he statute of limitations can be considered tolled while the union member attempts to exhaust all internal union appeal procedures." Opp'n 10 (citing *Lewis*, 826 F.2d at 1317). In *Lewis*, the plaintiff's union agreed to an absentee policy with the employer without allowing union members to vote on it. The union notified its members of this decision by letter dated July 15, 1985. 826 F.2d at 1311. The plaintiff then filed a grievance protesting the absentee policy, which was

8

dismissed by the grievance committee on September 12, 1985 on the ground that "the case is improper before the Committee." *Id*. The plaintiff filed a complaint against the union and his employer within six months of the denial of his grievance. The defendants argued that the complaint was untimely because it was filed more than six months after the July 15, 1985 letter stating that union members would not be allowed to vote on the absentee policy. *Id*. at 1317. Without deciding when the six-month statute of limitations had started to run on the plaintiff's claims, the Third Circuit held that "the statute of limitations does not begin to run [on LMRA claims against a union and employer] while the union member undertakes to exhaust internal union appeal procedures," and that "[t]he time for suit should not begin to run until 'the futility of further appeals [becomes] apparent or should have become apparent." 826 F.2d at 1317-18. Therefore, it remanded the case to the district court for a determination "of when the futility of further appeals should have become apparent." *Id*. at 1318.

In this case, Seitz's tolling argument is based on his continuing correspondence with Mitchell after January 21, 2020 in which he complained about the union's failure to pursue his grievance. However, Seitz does not allege that these communications constitute any form of "internal union appeal procedures." *Lewis* is thus distinguishable from this case. Moreover, Seitz's argument appears to be foreclosed by *Stone v. Writer's Guild of America West, Inc.*, 101 F.3d 1312, 1315 (9th Cir. 1996). In *Stone*, the Ninth Circuit noted that "the statute of limitations [on a duty of fair representation claim] may be tolled 'while an employee pursues intra-union grievance procedures, even if those procedures are ultimately futile.'" *Id*. (quoting *Galindo*, 793 F.2d at 1510). However, the court dismissed the plaintiff's claim as untimely because "the averments of the complaint and the attachment to it established that he was not exhausting any available administrative remedy during" the period in which the plaintiff sought to toll the statute of limitations; instead, "he and the union were expressing disagreement about administrative proceedings which had been exhausted" two years prior. *Id*. Further, the court noted that the plaintiff's collective bargaining agreement "provides for no subsequent administrative procedure which [he] could have been pursuing." *Id*.

As in *Stone*, nothing in Seitz's complaint or its attachments support the inference that Seitz

1  was pursuing an intra-union procedure after he learned on January 21, 2020 that the union would
2  not pursue his grievance. Accordingly, Seitz has failed to allege facts to support the application of
3  tolling.
4      At the hearing, the court gave Seitz the opportunity to articulate any additional facts to
5  support his claim that his complaint was timely under the theories of equitable estoppel and
6  equitable tolling. He was unable to do so. Accordingly, the court concludes that further
7  amendment would be futile and dismisses the complaint with prejudice.[3]

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. Seitz's complaint is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: December 22, 2020



Donna M. Ryu
United States Magistrate Judge

---

[3] As the court concludes that Seitz's complaint must be dismissed as untimely, it does not reach Defendants' remaining arguments in favor of dismissal.